IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHANITA MICHELLE HOWARD,      :
                              :
      Plaintiff,              :
                              :
vs.                           :
                              :      CIVIL ACTION 12-0672-M
CAROLYN W. COLVIN,            :
Commission of Social Security,[1] :
                              :
      Defendant.              :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22). Oral argument was waived in this action (Doc. 21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action. No further action needs to be taken as a result of this substitution. 42 U.S.C. § 405(g).

This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th
Cir. 1983), which must be supported by substantial evidence.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D.
Md. 1982).

At the time of the administrative hearing, Plaintiff was
forty-three years old, had completed a high school education
(Tr. 60), and had previous work experience as a cashier, sales
associate, housekeeper, and fast food worker (*see* Tr. 77-78).
In claiming benefits, Plaintiff alleges disability due to the
following:  "degenerative disease of the cervical spine s/p
anterior fusion and fixation with atlantis anterior cervical
plate; chronic pain syndrome; arthritis; and thyroid disease s/p
partial thyroidectomy; [and] malignant hypertension" (Doc. 16
Fact Sheet).

The Plaintiff filed an application for SSI on July 21, 2009
(Tr. 146-49; *see also* Tr. 19).  Benefits were denied following a
hearing by an Administrative Law Judge (ALJ) who determined that

although Howard could not return to her past relevant work,
there were specific light work jobs which she could perform (Tr.
19-30).  Plaintiff requested review of the hearing decision (Tr.
15) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Howard alleges
that:  (1) The ALJ did not properly consider the conclusions of
her treating physician; (2) the ALJ's finding regarding her
residual functional capacity (hereinafter *RFC*) is not supported
by the evidence of record; and (3) the Appeals Council did not
properly consider newly submitted evidence (Doc. 16).  Defendant
has responded to—and denies—these claims (Doc. 17).  The
relevant evidence of record follows.[2]

On May 14, 2009, Howard went to the University of South
Alabama Medical Center (hereinafter *USAMC*) with complaints of
lateral neck pain for one week following a work injury (Tr. 259-
62).  She was given Ultram[3] and prescriptions for Flexeril[4] and
Tylenol #3.[5]

---

[2]The Court will only review the evidence that is relevant to
the particular claims raised by Howard for the time period during
which she has asserted disability.

[3] *Ultram* is an analgesic "indicated for the management of
moderate to moderately severe pain."  *Physician's Desk Reference*
2218 (54th ed. 2000).

[4]Flexeril is used along with "rest and physical therapy for
relief of muscle spasm associated with acute, painful
musculoskeletal conditions."  *Physician's Desk Reference* 1455-57
(48th ed. 1994).

[5]**Error! Main Document Only.***Tylenol* with codeine is used "for

On May 29, 2009, White was seen at the Franklin Primary Health Center, Inc. for medication refills, complaining also that her shoulder continues to bother her (Tr. 265-66).  She was diagnosed to have myalgia in the neck and shoulder and told to wear a soft cervical spine collar and return in three months.

On November 6, 2009, Plaintiff underwent a consultative physical examination by Dr. Henrietta T. Kovacs (Tr. 281-88).  The doctor noted that White "was moaning continually during the musculoskeletal exam [and] resisted [] the passive range of motion of the [cervical] spine" (Tr. 284).  Kovacs further noted minimal limitation of the dorsolumbar spine in flexion though there was moderate limitation in the range of motion (hereinafter *ROM*) of the left shoulder in every direction.  The doctor noted that the motor system was normal and that White could heel and toe walk; she could squat with minimal help.  Dr. Kovacs' impression, in part, was as follows:  (1) cervical pain with questionable degree of limitation of the range of motion of the C-spine; (2) chronic low back pain, mild degenerative changes at L4-L5, and L5-S1 level; and (3) left shoulder pain with limitation of the ROM of the left shoulder.  X-rays of the lumbar spine were normal (Tr. 288).

Medical records from the Mobile County Health Department

---

the relief of mild to moderately severe pain."  *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

show that White was seen on September 22, 2010 with complaints of high blood pressure and headaches; she denied back pain or localized joint pain (Tr. 313-16; *see generally* Tr. 303-37). The C.R.N.P. noted that Plaintiff was in no acute distress and that there was no demonstrated decrease in suppleness in her neck; the musculoskeletal system was normal and a motor exam showed no dysfunction.  Six days later, White underwent a gynecological exam; she had no complaints (Tr. 311-13).  On October 28, Plaintiff complained of high blood pressure; she said her pain was zero on a ten-point scale (Tr. 309-10).  On December 15, White had a sinus infection that was diagnosed to be an upper respiratory infection (Tr. 306-08).  Two days later, Plaintiff went to get medication refills; she stated that she was in no pain (Tr. 303-06).  Motor exam was normal and the musculoskeletal system was found to be normal.  X-rays of the cervical spine demonstrated an anterior discectomy and interbody fusion at C5-6 with anterior metallic fixation hardware; it was further noted that body height and alignment was normal with disc spaces preserved (Tr. 335).  An x-ray of the left shoulder showed possible mild developmental hypoplasia in the relatively shallow glenoid fossa; x-rays of the lumbar spine, thoracic spine, and right knee were normal (Tr. 336).

On February 1, 2011, Dr. Gregory Evans, with the Mobile County Health Department, completed a physical capacities

evaluation (hereinafter *PCE*) that stated his opinion that White was capable of lifting and carrying ten pounds frequently and twenty pounds occasionally; he further indicated that Plaintiff could sit for six hours, and stand or walk for one hour, during an eight-hour day (Tr. 338).  Evans stated that White required an assistive device to walk.  The doctor found Plaintiff capable of operating motor vehicles frequently; fine and gross manipulation and reaching occasionally; and arms and leg controls, climbing and balancing, bending and/or stooping, and working with or around hazardous machinery rarely.  On the same date, Dr. Evans completed a pain questionnaire indicating that White's pain would distract her from daily activities or work and that physical exercise would increase her pain to such a degree that it would distract her from tasks and possibly cause abandonment of the tasks (Tr. 339).  The doctor further indicated that medication side effects should not decrease her job effectiveness.

At the evidentiary hearing, a Vocational Expert (hereinafter *VE*) testified, first, about Howard's previous relevant work (Tr. 76-82).  The ALJ then posed a hypothetical question to the VE about an individual with Plaintiff's RFC (Tr. 78; *cf.* Tr. 22) and asked if there was work available for this individual.  The Expert stated that although Howard would not be able to perform any of her past relevant work, he listed the

6

specific jobs of ticket taker, self-storage rental clerk, and office helper as available work that she could do (Tr. 79).

In her decision, the ALJ determined that Howard had

> the [RFC] to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b).[6]  Specifically, she can stand and walk no more than thirty minutes at one time and no more than two hours total in an 8-hour day.  She can no more than occasionally reach overhead, operate foot controls, climb stairs or ramps, bend, stoop, kneel, or crouch.  She can no more than frequently perform handling or reaching, other than overhead.  She cannot crawl or climb ladders, scaffolds, or ropes.  She cannot work around unprotected heights or dangerous equipment.

(Tr. 22).  In reaching this determination, the ALJ found that Howard's testimony regarding her pain and limitations was not credible to the extent alleged (Tr. 24-25).[7]  The ALJ adopted the conclusions of the VE as his own (Tr. 29).

In bringing this action, Plaintiff's first claim is that the ALJ did not properly consider the conclusions of her

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

[7]Plaintiff has not challenged this finding in this action.

treating physician.  Howard specifically references the conclusions of Dr. Gregory Evans (Doc. 16, pp. 6-10).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2013).

The medical record seems to illustrate that Dr. Evans examined Howard only once; that was on December 17, 2010 (Tr. 303-05).  On that day, Plaintiff was rated as having zero pain on a ten-point scale, was in no distress, and was following up on refill medications and lab results.  More than two months later, without further examination, Evans completed a PCE indicated that she was incapable of any work because she could not sit, stand, or walk for a combined total of eight hours during a workday (Tr. 338).  The ALJ discredited Dr. Evans' findings of disability on the grounds that he had provided no clinical or objective findings to support his opinions; the ALJ pointed out that his notes from the single examination he had conducted did not support his conclusions (Tr. 27).  The ALJ

---

[8] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

also pointed out that Howard's own testimony about her abilities was not as limiting as that of Dr. Evans.  Finally, the ALJ noted that none of the other medical evidence of record supported his conclusions.  The Court finds substantial evidence to support the ALJ's conclusions regarding Dr. Evan's findings.  Plaintiff's claim otherwise is without merit.

Howard next claims that the ALJ's finding regarding her RFC is not supported by the evidence of record.  The main thrust of this claim is that there is no medical evidence from any doctor that supports the variance in her abilities that the ALJ found as compared to the findings of her own treating physician (Doc. 16, pp. 4-6).  Plaintiff also asserts that no doctor other than Dr. Evans completed a PCE.

The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2013).  The Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 416.945(a)(3).

The Court found that Dr. Evans' medical conclusions are not supported by the evidence.  Howard's testimony was found not credible, a finding not challenged herein.  Though consultative examiner Kovacs did not complete a PCE, she did perform a full body examination of Plaintiff's ROM, finding almost no limitations except in the cervical spine and right shoulder (TR.

286-87).  With the scant medical evidence available in this
record, the Court cannot find that the ALJ was incorrect in
finding that Howard's RFC provided her the opportunity to work.
Plaintiff's claim otherwise is without merit.

Finally, Howard asserts that the Appeals Council did not
properly consider newly submitted evidence (Doc. 16, pp. 10-13).
It should be noted that "[a] reviewing court is limited to [the
certified] record [of all of the evidence formally considered by
the Secretary] in examining the evidence."  *Cherry v. Heckler*,
760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence
first submitted to the Appeals Council is part of the
administrative record that goes to the district court for review
when the Appeals Council accepts the case for review as well as
when the Council denies review."  *Keeton v. Department of Health
and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under
*Ingram v. Commissioner of Social Security Administration*, 496
F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed
to consider, if such a claim is made, whether the Appeals
Council properly considered the newly-submitted evidence in
light of the ALJ's decision.  To make that determination, the
Court considers whether the claimant "establish[ed] that:  (1)
there is new, noncumulative evidence; (2) the evidence is
'material,' that is, relevant and probative so that there is a
reasonable possibility that it would change the administrative

result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

The evidence being considered concerns an injury related to her cervical spine impairment (Tr. 36-52). The records date from June 16, 2000 through July 13, 2000, predating her asserted disability date of June 20, 2009 by nearly nine years. The Court finds that these records are neither new nor material; furthermore, Howard has not demonstrated good cause for failing to present them previously. The Court finds Plaintiff's assertion otherwise preposterous.

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 24th day of June, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

11